IN RE ESTATE OF FRANK BERGREN, DECEASED. CHARLES FRANKENBERGER ET AL., APPELLEES, V. LAURA IRENE HOLM ET AL., APPELLANTS.
IN RE ESTATE OF FRANK BERGREN, DECEASED. CHARLES FRANKENBERGER ET AL., APPELLEES, V. ARTHUR JOHN BERGREN ET AL., APPELLEES.

47 N. W. 2d 582

Filed May 4, 1951. Nos. 32929 and 32949.

*W. G. Whitford* and *James F. Brogan,* for appellants.

*Elmer C. Rakow,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action was originally instituted in the county court

of Antelope County by Charles Frankenberger, executor of the estate of Frank Bergren, deceased, and Effie Frankenberger, one of the legatees and devisees named in the will of Frank Bergren, deceased, for determination of heirship and the right of descent of the real and personal property belonging to the deceased.

On October 29, 1942, Frank Bergren made and executed a will by the terms of which he bequeathed and devised to his wife, Josephine Bergren, a life estate in all his property, both real and personal. After her death his property was to be divided in equal parts to his sole and only heirs at law, a niece and six nephews, all nonresidents of Nebraska; to his sisters-in-law Matilda Bergren and Caroline Matilda Bergren, the latter having predeceased the testator her share in his estate had lapsed; and to Lilion Owen, referred to as Lillian Owen, Perna Hill, and Effie Frankenberger, step-daughters, all nonresidents of Nebraska except Effie Frankenberger.

On January 26, 1949, Josephine Bergren, the widow of Frank Bergren, deceased, executed an election to take under the statute of inheritance, descent, and distribution, which will hereinafter be referred to as the statute, and renounced the will. This instrument was filed in the county court on January 27, 1949.

On September 15, 1949, objections were filed to the jurisdiction of the county court setting forth that to act upon the plaintiffs' petition necessarily involved a determination of the validity of the election to take under the statute for the reason that the election, if valid, was the equivalent of a determination effecting a present as distinguished from an ambulatory transfer of real estate; and for the further reason that at the time the petition in the instant case was filed in the county court an action was pending in the district court the determination of which necessarily involved the validity of the election of the widow to take under the statute and renounce the will. The objections to the jurisdiction were overruled.

This brings us to the question as to whether or not the county court had jurisdiction over the election of the widow to take under the statute and renounce the will. In this connection we deem the following authorities decisive of the jurisdictional question.

Article V, section 16, of the Constitution of Nebraska provides: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and in such proceedings to find and determine heirship; * * *: But they shall not have jurisdiction in * * * civil actions in which title to real estate is sought or drawn in question; * * *."

Section 24-503, R. R. S. 1943, provides: "The county court shall have exclusive jurisdiction of the probate of wills, the administration of estates of deceased persons, * * *." See, also, In re Estate of Reikofski, 144 Neb. 735, 14 N. W. 2d 379; Pinn v. Pinn, 108 Neb. 822, 189 N. W. 371; Fischer v. Sklenar, 101 Neb. 553, 163 N. W. 861; Brown v. Webster, 87 Neb. 788, 128 N. W. 635; In re Estate of Shierman, 129 Neb. 230, 261 N. W. 155; In re Estate of Statz, 144 Neb. 154, 12 N. W. 2d 829.

In the case of Billiter v. Parriott, 128 Neb. 238, 258 N. W. 395, the court held: "The right of election of a surviving spouse to take under the will of deceased or to take by inheritance, descent and distribution is purely statutory, and the manner prescribed of exercising that right is a condition upon which the right rests. * * * The county court in the settlement of an estate has jurisdiction to determine the heirs of the decedent. In doing so, the court does not determine the title to real estate, although the determination may incidentally involve a question of title."

Section 30-107, R. R. S. 1943, provides: "If any real estate be devised by a deceased husband or wife, to the surviving husband or wife of such deceased person, or other provision be made for him or her in the last will and testament of such deceased person, he or she shall

be entitled to his or her election to take the lands so devised, or the provision made for him or her in the last will and testament of such deceased husband or wife, or to take by inheritance, descent and distribution the interest in the estate of the deceased, provided by law; but he or she shall not be entitled to both unless it plainly appears by the last will and testament of the deceased to have been so intended by the testator or testatrix."

Section 30-108, R. R. S. 1943, provides: "When a surviving husband or wife shall be entitled to an election under section 30-107, he or she shall be deemed to have elected to take the real estate devised or other provision made by the last will and testament of the deceased, unless he or she shall, within one year after the issuance of letters testamentary, file in the office of the county court of the county in which such estate is being administered, a refusal in writing to accept the real estate so devised or other provision so made, and his or her declaration of his or her intention to take by inheritance and descent and distribution as by law provided. Such refusal and declaration shall be executed by such surviving husband or wife, and acknowledged in the same manner as deeds of conveyance of real estate."

The election made by Josephine Bergren, widow of Frank Bergren, deceased, to take by statute was executed and acknowledged as provided by section 30-108, R. R. S. 1943.

With reference to that part of the objections to jurisdiction having to do with an action filed by Effie Frankenberger against Laura Irene Holm et al., in the district court for the partition of 400 acres of land in Antelope County of which Frank Bergren was the fee simple owner at the time of his death, this court reversed and remanded the cause for insufficient evidence adduced by the plaintiff in that action, and also determined the evidence was insufficient to sustain the cross-action of the appellants for partition. See Frankenberger v. Holm,

*ante* p. 80, 46 N. W. 2d 901. This decision does not affect the instant case.

We conclude that the objections to jurisdiction were properly overruled by the district court.

Section 30-1606, R. S. Supp., 1949, provides that a case such as the one at bar is tried as an equity case in the district court. On appeal to this court the case is tried de novo on the record presented. See, also, sections 25-1105 and 25-1925, R. R. S. 1943.

The defendants, by answer, alleged facts upon which they rely to have the election of Josephine Bergren, the widow of Frank Bergren, deceased, to take under the statute declared void, for the reason that she lacked the mental capacity to voluntarily execute or understand the election to take under the statute, and further, that the execution of the instrument was not her voluntary act and deed and was procured by the undue influence of Charles Frankenberger, Effie Frankenberger, and others which controlled the will and confused the judgment of Josephine Bergren.

The trial court on June 23, 1950, entered its decree finding that Josephine Bergren was competent at the time she made the election to take under the statute, that the same was her voluntary act and deed, was executed and filed in the manner and form provided by law, and was in all respects valid and binding; and that Frank Bergren, deceased, never had children, and his widow, Josephine Bergren, was therefore entitled to receive one-half of all the property of the said deceased, both real and personal. See subdivision (4) of section 30-101, R. R. S. 1943. The trial court decreed that the real estate, in accordance with the laws of descent of the State of Nebraska and the will of the deceased, descended and became the property of the widow under the laws of the State of Nebraska as an intestate estate, and the heirs at law of the deceased and other persons named in the will. The court then decreed Josephine Bergren an undivided one-half interest in the estate,

and to all of the other legatees and devisees named in the will an undivided one twenty-second interest therein, and provided for distribution.

The defendants filed a motion for new trial, and upon the overruling of the same perfected appeal to this court.

For convenience we will refer to the parties as they are originally designated in the district court. Also, we will refer to Charles Frankenberger as Charles, Effie Frankenberger as Effie, and Josephine Bergren as Josephine.

The record discloses that Josephine Christiansen was born in Sweden on April 1, 1869. She came to America when she was 19 years of age. Her formal education was obtained in the schools of Sweden. She married and had three daughters, Effie, Lillian Owen, and Perna Hill. Her second marriage was to Frank Bergren in 1929, and she lived with him until his death on September 6, 1948, at Elgin, Nebraska. His will was admitted to probate October 14, 1948. He left certain personal estate, 400 acres of land in Antelope County, and his home in Elgin. Josephine and Frank Bergren had no children. Letters testamentary were issued to Charles on October 14, 1948. In 1941, Charles, the son-in-law of Josephine, and his wife Effie, her daughter, moved from Omaha to Elgin at the request of the Bergrens, to take care of them. Charles had retired as a railroad employee. Josephine Bergren died on January 29, 1949. She was nearly 80 years of age at the time.

While it appears from a certificate of death offered in the record that she died on January 28, 1949, occasioned by a cerebral hemorrhage suffered by her on January 23, 1949, there is little doubt but that the preponderance of the evidence discloses that she died on January 29, 1949.

Charles and Effie lived in the home with Josephine and Frank Bergren approximately a year before Mr. Bergren died, and for two or three years prior thereto spent considerable time with them. After Frank Ber-

gren's death Effie and Charles stayed with Josephine, cared for her, and took care of her business. Josephine did not write letters, but could sign checks. In 1934 or 1935, Josephine suffered a stroke of paralysis which affected her throat and speech and made it difficult for her to complete a sentence and for others to understand her, except those who knew her. Dr. Graham who had attended her at that time testified she was just unable to pronounce words. Two months thereafter she was capable of doing some housework, but not the washing. She had help for a period of nine months, and money was sent to her by Effie to have the washing done. She walked with a cane, or with some assistance. On January 19, 1949, Josephine suffered a second stroke of paralysis. After that her speech was very much affected and it was difficult to understand her. She would mix Swedish language in her conversation. She was unable to talk over the telephone. She was stooped over with arthritis and could not hold the telephone, and people on the other end of the line could not understand her. She did not possess an English Bible, but had a Swedish Bible, and she listened to Swedish programs over the radio. Her difficulty was principally due to arthritis in her legs, one of which was shorter than the other. She had difficulty in getting in and out of a car. After January 19, 1949, the date of her second stroke, she was unable to get out of bed unassisted and did not attend to her physical wants after that date.

It appears from the evidence that the matter of Josephine electing to take under the statute had been under consideration for some time. She was confused when she learned that under the provisions of the will she would be unable to sell the home in Elgin. She was desirous of selling the home and purchasing one in St. Paul, Minnesota, to be near her daughters who could assist in taking care of her. In an endeavor to satisfy her she was taken out to the farm, which she had not

seen for years. Considering her desires and the income from the farm not being adequate to support her, in her opinion it was thought best that the election to take under the statute should be made to enable her to get what she wanted and needed. The attorney for the estate explained to her the right to take under the statute and the effect of so doing. On January 26, 1949, at her request Charles went to Neligh to ask the attorney for the estate to prepare such a document, which was done. The attorney returned with Charles to Elgin where they met Mr. Daly and asked him to come along as a witness to a document prepared for Josephine to sign. When they arrived at the home Josephine was lying in bed. She did not have her glasses. It was thought best not to induce her to get up, so two pillows were placed under her which elevated her in a position so that she could see. The evidence shows that she did fancy work without glasses, and was able to see without glasses. Effie read the document to her and asked her if she understood it, and she indicated that she did. Her hand was strong, however she was unable to control it. She had written poorly for years. She took the pen and started to write, making some scratches on the instrument. Effie held her hand and she made her mark. The attorney asked her if she understood what was in the instrument and if it was her voluntary act and deed. She nodded her head indicating that it was. She smiled and shook hands with the attorney, and was assured the instrument would be filed in the Frank Bergren estate proceedings, which she wanted done. She had begged to have this matter attended to as she wanted to sign the instrument, and was pleased when the matter was completed.

The minister who had called on the Bergrens during Mr. Bergren's lifetime and on Josephine after Bergren's death visited with her about half an hour the afternoon the election to take under the statute was signed. He testified that she understood him, but it

was difficult for him to understand her because he was not Swedish; that she had average mental capacity for a person her age; and that her mind was clear.

Dr. Graham who had known the Bergrens for 20 years and served them as family physician, testified that he called on Josephine on January 19 and 22, 1949. She had an extreme weakness of the legs and needed help to stand up. She was mentally competent and knew what she was doing when he attended her. She was able to sit up, with help, on January 22d. He always had difficulty in understanding her because she talked Swedish about one-third of the time.

The prima facie case made by the plaintiffs disclosed that Josephine was mentally competent at the time she executed the election to take under the statute.

The defendants' evidence as to Josephine's mental incapacity to elect to take under the statute and renounce the will dealt to considerable extent with her physical disabilities. She suffered from arteriosclerosis, two paralytic strokes, and arthritis which affected her ability to get around unattended and to talk to the extent of formulating sentences so that she could be understood, and also affected her mentally to know and understand the meaning of an election to take under the statute. She had been confined to the house for a long period of time with Charles and Effie in constant attendance upon her to take care of her physical needs because she was unable to comb her hair or go to the bath unassisted. She was sick in bed approximately three weeks prior to her death. The last ten days of her life she did not mention her daughters in Minnesota or request that they come and see her. She was, for the most part, fed liquids. She signed the election to take under the statute with the knowledge that she was going to die in the near future, and was asked by the minister if she was afraid to go. She indicated that she was not, but in fact she did die three days thereafter. She never consulted any attorney except the attorney for the estate

whom she met after her husband's death, and when this attorney advised with her Charles and Effie were always present. They had managed her business affairs after her husband's death and never left her alone with anybody.

A medical expert testified in behalf of the defendants in answer to hypothetical questions which contained most of the relevant and material evidence adduced, except that eliminated from the questions was the attendance of the family physician on Josephine. This expert gave his opinion that Josephine was incompetent to execute the election to take under the statute on January 26, 1949. He did not express an opinion as to the competency of Josephine, in answer to a hypothetical question if she had suffered a stroke on January 23, executed the election to take under the statute on January 26, 1949, and departed this life on January 28, 1949, whether or not she was competent to do so. However, when he was recalled he did express the opinion that she was incompetent to execute the election to take under the statute considering the dates set forth in the hypothetical question. This expert testified that if the family physician examined the patient and had known her for years, that he would have a fairly good understanding as to her competency. This expert was unacquainted with Josephine and had never seen her.

The medical expert presented by the plaintiffs testified that to determine the competency of a person it is necessary to take into consideration their alertness, whether or not there had been mental deterioration, the extent of it, whether or not the patient had suffered hallucinations of any kind, and the specific history by a physician in whom the examining doctor had confidence.

There are certain letters in evidence upon which the defendants rely as indicating undue influence on the part of Charles and Effie, also evidence that the last year of her life Josephine did not write letters. The

letters relied upon to show undue influence merely show that Charles and Effie were desirous of buying the respective shares of the heirs at law and others.

The arrangements for Josephine to take under the statute had been discussed and agreed upon some months before she actually executed the instrument. While there is some intimation on the part of the defendants that Josephine executed the election to take under the statute anticipating her death in the near future and with the intention to disavow the provisions of the will for the purpose of enhancing the value of the estate for the benefit of her heirs at law and thus defeating the legatees and devisees under the will of a fair share of the estate, we find no merit to this contention. She had the legal right to make the election to take under the statute if she was competent to do so and was not unduly influenced by others to execute the instrument.

The burden of proof is on the party who alleges the mental incapacity of a widow to elect to take under the statute and renounce the will to prove by a preponderance of the evidence that she was not mentally competent at the time she executed the instrument. See Brugman v. Brugman, 93 Neb. 408, 140 N. W. 781. The rule in this respect is the same as when it is sought by a party to set aside a deed or will for the want of mental capacity.

In determining the mental capacity of a widow to execute an election to take under the statute and renounce the will, if it clearly appears that when the instrument was executed the widow had the capacity to understand what she was doing and to decide intelligently whether or not she desired to execute the instrument, it cannot be said that she was incompetent or incapable at the time of executing the instrument. In order to invalidate an election of a widow to take under the statute on the ground of mental incapacity, it is necessary to show such a degree of mental weakness as renders her incapable of understanding and pro-

tecting her own interests at the time she executed the instrument. See, Broeker v. Day, 124 Neb. 316, 246 N. W. 490; Little v. Curson, 114 Neb. 752, 209 N. W. 737; Parkening v. Haffke, 153 Neb. 678, 46 N. W. 2d 117.

In the case of In re Dellow's Estate, 290 Mich. 167, 287 N. W. 420, an 83-year-old widow was an unkempt, sickly person, reserved and disinclined to read and write. It was stated and held that these facts did not necessarily mean that she was incompetent to make an election to take under the statute rather than under her late husband's will, for if she was capable of reasoning and taking reasonable action, she was competent to make an election. Neither the jury nor the court might substitute its views for hers.

The evidence in the instant case, in the light of the afore-cited authorities, clearly indicates that the defendants have failed to prove that Josephine lacked the mental capacity to execute the election to take under the statute. The trial court did not err in so holding.

On the proposition raised by the defendants on undue influence, a person asserting that a widow, at the time she executed and filed an election to take under the statute and renounce the will of a deceased person was subject to undue influence by which the instrument was procured must establish by a preponderance of the evidence (1) that the widow, at the time of executing the instrument, was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. See, In re Estate of Thompson, 153 Neb. 375, 44 N. W. 2d 814; In re Estate of Scoville, 149 Neb. 415, 31 N. W. 2d 284; In re Estate of Benson, 153 Neb. 824, 46 N. W. 2d 176.

The burden is on the defendants in this case to produce evidence tending to prove each of the four elements stated above, as a prerequisite of their right to have the issue determined. If any one of the essential elements enumerated is not supported by evidence or reasonable

inference drawn from a fact or facts otherwise established, the contention of undue influence must be rejected. The evidence must tend to show undue influence directly in reference to the election to take under the statute in question, and be of such a nature as to control the will of the widow of Frank Bergren and cause her to do something that she did not intend. Suspicion or supposition of undue influence is not sufficient to require the court to determine the question and render a judgment to such effect. See, In re Estate of Bayer, 119 Neb. 191, 227 N. W. 928; In re Estate of George, 144 Neb. 887, 15 N. W. 2d 80; In re Estate of Goist, 146 Neb. 1, 18 N. W. 2d 513; In re Estate of Bainbridge, 151 Neb. 142, 36 N. W. 2d 625.

From an analysis of the evidence it is true that the opportunity to exercise undue influence existed. However, there is no clear and satisfactory evidence that Josephine was subject to such influence. A disposition to exercise such influence is not clearly and satisfactorily shown, or that the result appears to be the result of such influence. We conclude the trial court did not err in determining that the defendants failed to prove undue influence as required by law.

The defendants filed a supplemental motion for new trial for newly discovered evidence primarily to the effect that Josephine Bergren was deaf to ordinary conversation and therefore unable to know or understand what had been told her about the right to take under the statute. This motion was supported by affidavits to which counter-affidavits were filed. We have examined the purported newly discovered evidence and find that this motion for new trial was properly overruled.

The applicable rule is that a new trial will not be granted on the ground of newly discovered evidence unless it is made to appear that such evidence, if it had been offered and admitted on the trial, would probably have produced a different result. The application for a new trial on the ground of newly discovered evi-

dence is addressed to the sound judicial discretion of the trial court, and its action thereon will not be over-ruled unless there is a clear abuse of discretion shown. See, Morrill County v. Bliss, 125 Neb. 573, 251 N. W. 106; Hodges v. Hodges, *ante* p. 178, 47 N. W. 2d 361.

Other assignments of error are without merit and need not be determined.

For the reasons given herein the judgment of the district court is affirmed.

AFFIRMED.