IN RE ESTATE OF HELEN D. DISNEY, DECEASED.
GRACE LUTHERAN CHURCH, APPELLANT, V. RUTHMARIE VAWTER
AND NORWEST BANK, NEBRASKA, N.A., COPERSONAL
REPRESENTATIVES OF THE ESTATE OF CARROLL T. DISNEY,
DECEASED.

550 N.W.2d 919

Filed July 26, 1996.   No. S-94-829.

Jeffrey D. Toberer, Karen M. Shuler, and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellant.

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Carroll T. Disney, surviving spouse of Helen D. Disney (decedent), petitioned the Douglas County Court for his elective share of the decedent's augmented estate. Grace Lutheran Church (Grace Lutheran), a named beneficiary in the decedent's will, objected to Disney's election to receive 50 percent of the decedent's augmented estate. It claimed that (1) Disney was incompetent to make such election and (2) he was unduly influenced by his daughters.

The county court found that Disney's election was valid. The district court for Douglas County affirmed the county court's decision. Grace Lutheran appealed to the Nebraska Court of Appeals. We removed the appeal to this court's docket pursuant to our power to regulate the caseloads of the lower courts.

We affirm the judgment of the district court.

## ASSIGNMENTS OF ERROR

Restated, Grace Lutheran claims that the district court erred in (1) reviewing for error appearing on the record rather than conducting a de novo review, (2) failing to accept Disney's sworn testimony as an effective waiver of his right to an elective share, (3) finding that Disney was legally competent to execute the petition for elective share, (4) finding that the petition for elective share was not a product of undue influence, and (5) failing to set aside the conditional petition for elective share as violative of Neb. Rev. Stat. § 30-2315 (Reissue 1995).

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of*

*Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995); *In re Estate of Hannan*, 246 Neb. 828, 523 N.W.2d 672 (1994).

Grace Lutheran contends that the standard of review of an appeal of an equity action should be de novo on the record. Grace Lutheran is wrong in contending that this litigation involves an equity action. Proceedings to determine legal competency and alleged undue influence in a probate context sound in law, and the findings of the trier of fact will not be disturbed unless clearly wrong. See, *Peterson v. Peterson*, 230 Neb. 479, 432 N.W.2d 231 (1988) (undue influence in probate context is matter of law, not equity); *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987) (findings of legal incapacity reviewed for error appearing on record). *In re Estate of Carman*, 213 Neb. 98, 327 N.W.2d 611 (1982), holds that a challenge to a spouse's statutory election to take against a will of a deceased spouse is to be reviewed by this court de novo on the record. However, *In re Estate of Carman* was decided under a statute that no longer exists. See 1981 Neb. Laws, L.B. 42 § 27.

## FACTS

The record reflects that the decedent and Disney were married October 24, 1964. The decedent died March 24, 1993, leaving no children surviving her. Disney was the father of two daughters by a previous marriage.

Disney was 94 years old at the time of the decedent's death. The decedent's estate was valued at $2,571,997.86, not including property held in joint tenancy with Disney. According to the decedent's will, approximately $2,400,000 was to be distributed to a trust. The decedent's will provided that during the remainder of his life, Disney would receive an annual income from the trust of approximately $100,000 per year. Upon Disney's death, the trust was to provide for various beneficiaries, including Grace Lutheran. Upon the trustee's death, resignation, or incapacity, the residue of the trust would be distributed to Grace Lutheran.

On May 11, 1993, Disney, in writing, renounced his rights and interest in the decedent's will, and in the writing, he elected to take 50 percent of the decedent's augmented estate

pursuant to Neb. Rev. Stat. § 30-2317 (Reissue 1995). Grace Lutheran objected to Disney's election. It alleged that when he decided to take his elective share, Disney was incapacitated and/or incompetent and unable to elect against the decedent's will and that he was unduly influenced by his daughters, Lois Vawter and Carolee Roberts.

After exercising his statutory right to elect to receive 50 percent of the decedent's augmented estate, Disney later executed a durable power of attorney appointing Vawter, Roberts, and Norwest Bank, Nebraska, N.A. (Norwest) as his attorneys in fact. Vawter, Roberts, and Norwest, pursuant to the durable power of attorney, filed a conditional petition for elective share on behalf of Disney. The conditional petition alleged that in the event the county court should find that Disney lacked the capacity to make a valid and legal election of his share of the decedent's augmented estate, the attorneys in fact elected, on Disney's behalf, to take 50 percent of the decedent's augmented estate. Grace Lutheran objected to the conditional petition on the ground that only Disney could petition for his elective share.

The record reflects that approximately 1 month after the decedent's will was filed for probate, John Respeliers, the attorney representing the decedent's personal representative, met with Disney twice, in the presence of one of Disney's children, to inform Disney of his right to an elective share of the decedent's augmented estate and the need to contact an attorney of Disney's choice if he should make such an election.

At the hearing on Disney's petition for his elective share and the conditional petition, Disney's counsel informed the county court, prior to Disney's testimony, that Disney was getting very tired while waiting to be called to testify. Once called, Disney testified that he was at the hearing because he was trying to "get some money — a part of the share." During his testimony, Disney stated that he had not filed a petition for an elective share and did not ask an attorney to file papers to take any amount other than what the decedent's will provided. At one point, the court asked Disney if he asked for more money from the decedent's estate, to which Disney responded, "No."

Jay Vankat, the attorney who advised Disney as to the elective share and prepared and submitted the petition for Disney's elective share, testified that Disney read and understood the decedent's will at the time he executed his petition for his elective share. Vankat testified that at the time Disney executed the petition, Disney informed him that he wanted to make the election to receive one-half of the decedent's estate directly. Vankat testified that Disney was competent at the time of his election. Vankat also testified that he did not observe any undue influence exercised on Disney by his daughters regarding Disney's election.

On September 19, 1993, Nancy Willcockson, a clinical psychologist, conducted a clinical interview and testing of Disney at the request of Grace Lutheran. At the hearing, Willcockson testified that Disney fell within the moderate-severity range of dementia. Willcockson diagnosed Disney as suffering from senile dementia of the Alzheimer's type. According to Willcockson, Disney's degenerative dementia predates July 1990. Willcockson acknowledged that individuals suffering from senile dementia of the Alzheimer's type perform worse in stressful and tiring situations. At trial, Willcockson was questioned as follows:

Q- . . . Doctor, do you have an opinion that you can state within a reasonable degree of scientific certainty as to whether or not Mr. Disney has the capacity to understand what he has done regarding his wife's will and his election to take against the will? Do you have such an opinion, yes or no?

A- Yes.

Q- And what's that opinion?

A- I believe that Mr. Disney does not have the capacity to understand the election against the will.

On August 31, 1993, John C. Goldner, a neurologist, examined Disney at the request of Disney's lawyer. At trial, Goldner testified that people who have dementia, even advanced stages of dementia, have periods of clarity where they recognize and comprehend things, while at other times they do not. Goldner also testified that Disney was capable of making decisions on his own and understanding what was

going on around him. Goldner further testified that Disney could make an intelligent decision as to whether he wanted more or less money.

The records of Thomas Connolly, Disney's treating physician, reflect that Connolly diagnosed Disney as suffering mild cerebral degeneration in December 1991 and in August 1992. In July 1993, Connolly again diagnosed Disney's cerebral degeneration but also noted that Disney was "competent to understand he does have need for the money in [the decedent's] estate and appreciates this and understands it well."

Vawter, Disney's daughter, testified that when Disney was told of his right to an elective share, he informed her that he felt that Grace Lutheran had received enough money from the decedent.

In substance, the county court found that (1) Disney did not waive his elective right to take 50 percent of the decedent's estate during the hearing, because there was no written waiver, and he was "clearly tired" during the questioning; (2) Disney's election to receive 50 percent of the decedent's estate was valid; and (3) Disney was not subjected to undue influence.

The county court did not address the conditional petition for elective share, because it found Disney's personal election was valid.

Upon appeal, the district court reviewed the county court record for error. The district court found that the record supported the findings of the county court, and it affirmed that court's judgment. On July 25, 1994, less than 1 month before the district court order, Disney died. This action was revived by the copersonal representatives of Disney's estate.

## ANALYSIS

Grace Lutheran contends that Disney, in his sworn testimony, waived his right to an elective share. The right of election of a surviving spouse may be waived, wholly or partially, *by a written contract, agreement, or waiver signed by the surviving spouse*. See Neb. Rev. Stat. § 30-2316 (Reissue 1995). As noted by the trial court, the record does not reflect any written or signed waiver of a right to an elective share on the part of Disney.

At the hearing, Disney testified that he did not file a petition for elective share. The record, however, reflects that he did. Furthermore, the trial court did not put great weight on Disney's testimony because he was "clearly tired." This finding is supported by Willcockson's testimony that someone with Disney's symptoms of dementia does not perform well under stressful and tiring situations. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988). It is not the province of an appellate court to weigh or resolve conflicts in the evidence, the credibility of witnesses, or the weight to be given to their testimony. *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985).

Grace Lutheran also contends that the record does not support the court's finding that Disney was legally competent. The burden of proof is on the party who alleges the mental incapacity of a surviving spouse who takes an elective share and renounces the will to prove by a preponderance of evidence that the surviving spouse was not mentally competent *at the time the surviving spouse executed the instrument*. See *In re Estate of Bergren*, 154 Neb. 289, 47 N.W.2d 582 (1951). In order to invalidate the taking of an elective share, it is necessary to prove such a degree of mental weakness as renders the surviving spouse incapable of understanding and protecting his or her own interests at the time he or she executed the instrument. See *id*.

The record reflects that although Disney suffered from a degenerative dementia, the attorney who advised Disney and who prepared and submitted the petition for Disney's elective share testified that Disney was mentally competent at the time he made his election. Disney's treating physician noted 2 months after Disney filed his petition for his elective share that Disney was mentally competent to understand his need for money from his wife's estate. There is sufficient evidence in the record to support the finding of the county court that Disney was mentally competent at the time he exercised his statutory right, in writing, to take his statutory share of the decedent's augmented estate.

In summary, there was conflicting evidence in the record as to Disney's mental capacity to make an election. The trial court accepted as more credible the testimony that Disney was competent to make such an election. It is not the province of this court to weigh or resolve conflicts in the evidence, the credibility of witnesses, or the weight to be given their testimony. *In re Estate of Odineal, supra.*

Grace Lutheran claims that the record does not support the county court's finding that Disney's decision was not the product of undue influence. Upon an allegation that a surviving spouse decided to take an elective share and renounce the will of the decedent as a result of undue influence, the proponent of the allegation has the burden to prove by a preponderance of evidence (1) that the surviving spouse, at the time of executing the instrument, was subject to such influence; (2) that the opportunity to exercise existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. See *In re Estate of Bergren, supra.* The record reflects only that Disney was accompanied by at least one member of his family when he was advised of his right to an elective share and decided to exercise such election. Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; there must be a solid foundation of established facts on which to rest the inference of its existence. *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994). The county court was not clearly wrong in finding that Disney's petition for elective share was not the product of undue influence. Grace Lutheran's assignment of error in regard to undue influence has no merit.

We need not address Grace Lutheran's claim that the conditional petition for Disney's elective share should be set aside, because we affirm the decision of the county court that Disney's petition for his elective share of the augmented estate was valid.

## CONCLUSION

The record supports the findings of the county court that Disney was mentally competent and not unduly influenced at

the time he, in writing, elected to take his statutory share of the decedent's augmented estate.

We affirm the district court's affirmation of the county court's findings and judgment.

AFFIRMED.

WHITE, C.J., not participating.