**Grace M. FOMAN, Appellant–Respondent,**

**v.**

**Alene MOSS, as Personal Representative of the Estate of Odell Foman, Appellee–Petitioner.**

**No. 18A02–9511–CV–669.**

Court of Appeals of Indiana.

June 5, 1997.

David W. Stone IV, Stone Law Office & Legal Research, John G. Garman, Jr., Anderson, for appellant.

Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, for appellee.

## OPINION

GARRARD, Judge.

The trial court set aside Grace Foman's ("Foman") election to take against her deceased husband's will because she was incompetent. The trial court appointed a guardian and ordered the guardian not to file an election to take against the will. Despite the trial court's order, the guardian subsequently filed, on Foman's behalf, an election to take against the will which the trial court struck as invalid. Foman appeals. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

---

1. The estate contends that Wright was not the court appointed guardian at the time he filed the election on Foman's behalf. The trial court originally appointed Lon Bryan, an attorney, who subsequently filed a petition to rescind his appointment indicating that it would be in Foman's best interest for Wright to be appointed guardian. Although the appointment of Bryan was not

## FACTS AND PROCEDURAL HISTORY

On February 13, 1994, Odell Foman ("Odell"), Foman's ninety-one year old husband, died testate with no living children or descendants of children surviving him. Odell's last will and testament, dated December 29, 1992, left Foman five thousand dollars ($5,000) with the balance of his estate, approximately two hundred thousand dollars ($200,000), to be divided among his four nieces. Following Odell's death, Foman, who was also ninety-one, moved to Florida with her son and was eventually placed in a nursing home in May 1994. Foman signed an election in late May 1994, to take against Odell's will. The trial court subsequently entered an order that Foman was allowed to elect against the will and also ordered the estate to pay her survivor's allowance.

The devisees of Odell's will ("devisees") filed an objection to the final accounting in May, 1995, arguing that Foman's election was invalid because she was not mentally competent to make such an election. After a hearing, the trial court found on July 31, 1995, that Foman was not mentally competent to make an election to take against the will, struck the election, appointed a guardian and ordered the guardian not to elect to take against the will. Robert C. Wright ("Wright"), Foman's son, acting as Foman's temporary guardian, filed an election to take against the will on her behalf on August 30, 1995.[1] The estate moved to strike the election and on September 11, 1995, the trial court struck the election because it was contrary to the court's July 1995 order and therefore invalid. Additional facts are supplied as needed.

## ISSUES

Foman presents two issues on appeal.

1. Whether the trial court erred in finding that Foman was not competent to elect to take against the will.

---

rescinded by the trial court until September 5, 1995, in its September 11, 1995 order striking the purported election, the trial court referred to Wright as the temporary guardian and struck the election as being contrary to its July 31, 1995 order that the guardian not make an election against the will. R.205–06.

2. Whether the trial court abused its discretion in ordering that Foman's guardian not elect to take against the will on Foman's behalf.

### DISCUSSION AND DECISION

#### Issue I

■ Foman maintains that the burden of proof was on the devisees to establish that she was incompetent to make an election. Therefore, Foman concludes that she is not appealing a negative judgment, citing *Matter of Estate of Covell*, 540 N.E.2d 74, 75 (Ind.Ct. App.1989), *trans. denied.* In *Covell*, we indicated that the appellants, who appealed the trial court's judgment finding that the widow *was* competent to elect against her deceased husband's will, were appealing a negative judgment. When an appellant bears the burden of proof at trial, he appeals from a negative judgment. *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Although we did not directly indicate in *Covell* that the party challenging the competency of the spouse electing to take against the will bears the burden of proof, our standard of review supports that conclusion. It is also noteworthy that every person is presumed to be of sound mind to execute a will until the contrary is shown. *Kronmiller v. Wangberg*, 665 N.E.2d 624 (Ind.Ct.App.1996), *trans. denied.* We agree that the burden of proof was on the devisees to establish Foman's incompetency. Therefore, Foman is appealing a general judgment.

■ In reviewing general judgments issued in a civil case tried to the bench, we ask only "whether there is substantial evidence of probative value supporting the verdict on any legal theory. We do not reweigh evidence or judge the credibility of witnesses. In examining the record, we consider only the evidence most favorable to the prevailing party along with all reasonable inferences to be drawn from it." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 427, n. 5 (Ind.1991), *reh'g denied, cert. denied* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992); *see also Martin v. Roberts*, 464 N.E.2d 896, 904 (Ind.1984). Conflicts in the evidence, standing alone, do not render the evidence insufficient if there is relevant evidence to support the claim. *Estate of Hann v. Hann*, 614 N.E.2d 973 (Ind.Ct.App.1993).

Foman asserts, and Odell's estate agrees, that Indiana opinions have not discussed the degree of mental competence a person must possess in order to elect to take against the will. Appellant Brief, p. 12; Appellee Brief, p. 14. Further, Odell's estate is willing to accept the test for mental competency of electing spouses which is advanced by Foman. Foman urges this court to adopt the standard employed by Michigan and Nebraska. Additionally, Foman contends that there is no reason a greater degree of competency should be required to elect to take against the will than is required to make a will in Indiana.

This court has reviewed trial court decisions regarding the competency of a surviving spouse to elect against the will; however, our research does not reveal a case in which a method or test is set forth for establishing the competency required of a surviving spouse who elects to take against the will. Therefore, we examine the reasoning of the cases advanced by Foman in the following excerpt of her brief.

> In *In re Dellow's Estate*, 290 Mich. 167, 287 N.W. 420 (1939) the court considered an election by an 83 year old on the day of her husband's funeral. It said:
>
> > The fact that Mrs. Dellow was an unkempt, sickly person, reserved and disinclined to read and write, does not necessarily mean that she was incompetent to make an election to take under the statute. If she was capable of reasoning and taking reasonable action, she was competent to make an election, and the jury was properly instructed that, if such was the case, neither it nor the court might substitute its views for hers. 287 N.W. at 421–22.
>
> In *In re Bergren's Estate*, 154 Neb. 289, 47 N.W.2d 582 (1951), the court said:
>
> > In determining the mental capacity of a widow to execute an election to take under the statute and renounce the will, if it clearly appears that when the instrument was executed the widow had

the capacity to understand what she was doing and to decide intelligently whether or not she desired to execute the instrument, it cannot be said that she was incompetent or incapable at the time of executing the instrument. In order to invalidate an election of a widow to take under the statute on the ground of mental incapacity, it is necessary to show such a degree of mental weakness as renders her incapable of understanding and protecting her own interests at the time she executed the instrument. (citations omitted). 47 N.W.2d at 589.

Appellant's Brief, p. 12. The Nebraska Supreme Court recently relied on its holding in *In re Bergren's Estate* in deciding *In Re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919, 924 (1996). In upholding the trial court's determination that the surviving spouse who elected to take his statutory share was competent, the court stated:

In summary, there was conflicting evidence in the record as to Disney's [the surviving spouse] mental capacity to make an election. The trial court accepted as more credible the testimony that Disney was competent to make such an election. It is not the province of this court to weigh or resolve conflicts in the evidence, the credibility of witnesses, or the weight to be given their testimony. [Citation omitted].

*In Re Estate of Disney*, at 924.

Foman also contends that Indiana's test for determining the mental competency of a testator at the time of executing a will is instructive. In *Farner v. Farner*, 480 N.E.2d 251 (Ind.Ct.App.1985), we enunciated Indiana's test.

Every person is presumed to be of sound mind to execute a will until the contrary is shown. [Citation omitted]. Only where the testator lacks mental capacity at the time of executing the will to know (1) the extent and value of his property; (2) those who are the natural objects of his bounty; and (3) their deserts, with regard to their treatment of and conduct toward him, will the law in Indiana invalidate a will. [Citation omitted]. If the testator is of sound mind to execute his will at the time he does so, it is immaterial

what may have been his condition at some other time. [Citation omitted]. Although evidence of the testator's mental condition prior to and following the date of execution is admissible, such is relevant only as evidence of his mental state when making the will. [Citation omitted].

Nor is all mental weakness or infirmity enough to set aside a will. The testator may not be in full possession of his reasoning powers and his memory may be slightly obscured or clouded, but if the above conditions are met, his will is deemed valid. [Citation omitted]. The mere fact that the testator was of unsound mind when the will was executed is not enough to invalidate the will if it did not affect his making of the will and disposition of his property. [Citation omitted]. As stated in *Bundy [v. McKnight*, 48 Ind. 502 (1874)] "Case upon case can be cited which go to the extent of deciding that unless the failure of understanding be quite total, reaching to the testator's forgetfulness of his immediate family and property, he is not disqualified from making a will," for the weak and aged must be accorded the same rights as the strong-minded to dispose of their property.

*Id.* at 259.

■ We are persuaded by the logic of the Nebraska Supreme Court and incorporate its rationale in determining whether to invalidate the surviving spouse's election to take against the will based on incompetency. It cannot be said that a surviving spouse was incompetent or incapable at the time of election if she had the capacity to understand what she was doing and to make an intelligent choice of whether or not to make such election. It must be shown that the surviving spouse's mental weakness rendered her incapable of understanding and protecting her own interests before her election to take against the will can be invalidated based on mental capacity. Similar to Indiana's test for a testator's mental capacity, not all mental weakness or infirmity will be enough to set aside a surviving spouse's election to take against the will. It is not required that the surviving spouse possess all of her reasoning powers and memory.

■ Applying this test to the case at bar, we must be mindful of our standard of review. Although the evidence was not without conflict, there was sufficient evidence to support the trial court's finding that Foman was mentally incompetent at the time she executed her election to take against the will.

At the hearing on the devisees' objection to the final accounting on July 18, 1995, Dr. Charles Dinwiddie, a majority of whose practice involved treating older patients, testified regarding his treatment of Foman from October 1993 to March 1994. He indicated that Foman had Alzheimer's Disease, was confused and in and out of coherency. After reviewing Foman's election to take against the will, he testified that he did not believe that Foman could have understood what she was signing. Katherine Hammond, who knew Foman most of her life and was hired to care for her approximately a year prior to Odell's death, testified that Foman's mental condition continued to get worse. She indicated that after Odell died, Foman would forget that he had died, and reached the point of being confused most of the time. Hammond testified that in her opinion Foman would not have understood the election to take against the will. Additionally, Mary Wright, Foman's sister-in-law, testified that just prior to Odell's death, Foman wasn't competent like she used to be, rambled at night and was confused. Wright also testified that she doubted that Foman would have understood what the election to take against the will meant. Similar to the determination of the competency of a testator in executing his will, Foman's condition prior to her election constituted relevant evidence in making the determination of her mental competency at the point of execution. *Farner, supra.*

There was additional testimony from Foman's son, a friend of Foman's son and a care giver who cared for Foman in the spring of 1994 which supported Foman's competency. However, we consider only the evidence most favorable to the prevailing party along with all reasonable inferences to be drawn from it. *Bayh v. Sonnenburg,* 573 N.E.2d at 427. Conflicting evidence does not render the evidence supporting a judgment insufficient. *Estate of Hann v. Hann,* 614 N.E.2d

973. The record is replete with instances of Foman's conduct which would allow the trial court to infer that Foman was incompetent to elect to take against the will. We cannot reweigh the evidence or judge the credibility of the witnesses. We cannot say that the record lacks relevant evidence to support the trial court's determination of incompetency.

Accordingly, we affirm the trial court's determination that Foman was incompetent at the time she elected against the will.

**ISSUE II**

Foman contends that the trial court erred in ordering that her guardian not elect to take against the will because there was no evidence in the record that not electing was in Foman's best interest. She maintains that she was denied due process because her guardian was not given an opportunity to be heard and further that the trial court lacked authority to issue an unsolicited order to the guardian.

IND.CODE § 29–1–3–4 provides that:

The right of election of the surviving spouse is personal to the spouse. It is not transferable and cannot be exercised subsequent to the spouse's death. *If the surviving spouse is a protected person, the court may order the guardian of the spouse's estate to elect for the spouse.*

*Id.* (emphasis added). "Protected person" is defined at IND.CODE § 29–3–1–13 as "an individual for whom a guardian has been appointed or with respect to whom a protective order has been issued." A previous version of the statute required the guardian of an insane surviving spouse to:

[F]ile a petition in the circuit court of the county where such will is probated, praying for the advice of the court, to determine whether he, as such guardian, shall, on behalf of his ward, take under such will or renounce the provisions of the same and take under the laws of descent of the state of Indiana. . . . Upon such petition being filed, the circuit court shall hear evidence and determine whether it is for the best interests of such insane husband or wife to take under said will or under said laws of descent, and such court shall enter an order and judgment accordingly. If such

court shall determine that it would be to the best interest of such husband or wife to renounce such will and take under said laws, said guardian shall, . . . file his election on behalf of his ward. . . .

Burns Annotated § 6–2335 (1933) (repealed) (as added by Acts 1907, ch. 48, § 4, p. 73). This former statute *required* guardians for insane surviving spouses to petition the court for advice and subsequently for the court to hear evidence regarding which option was in the best interest of the spouse. The statute was modified in 1953 to remove this requirement. Burns Annotated § 6–304 (1953) (repealed) (as added by Acts 1953, ch. 112, § 304, p. 295).

In *Bonge v. Risinger*, 511 N.E.2d 1082 (Ind.Ct.App.1987), *reh'g denied, trans. denied*, this court held that a guardian was not required to consult the court before electing to take against the will on behalf of an incompetent surviving spouse. We based our decision in part on the legislature's amendment which removed the language requiring the guardian to petition the court for advice. *Id.* at 1083–84.

In *Matter of Estate of Covell*, we noted that the former version of the statute required a guardian or conservator to petition the court for advice regarding an election. We indicated that "I.C. 29–1–3–4 eliminates this mandatory provision, *but at the same time allows the court discretion in deciding whether a guardian must elect against a Will on behalf of an incompetent. See Bonge v. Risinger* (1987), Ind.App., 511 N.E.2d 1082, 1084." *Id.* at 76 (emphasis added). In *Covell*, we found that there was sufficient evidence at trial to support the trial court's holding that the surviving spouse was competent to elect against the will, noting that her conservatorship was due solely to her blindness and not any mental incapacity. Although we held that the surviving spouse's election was valid because she was mentally competent, we *did note that pursuant to* IND. CODE § 29–1–3–4, the court could order the conservator bank to make an election on the surviving spouse's behalf.

The court *had a duty to supervise and approve the guardian's actions,* both when the petition to elect against the Will was approved by the court and when the Will was probated. Judge Stump has fulfilled this duty. He had made it clear that it was in [the surviving spouse's] best interest to elect against [the deceased's] Will and has accomplished that objective by approving her personal election and by ordering the conservator to file an election in her behalf.

*Covell*, at 76 (emphasis added).

■■■■■ The trial court had the discretion to direct the guardian regarding the election to take against the will. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *DeVittorio v. Werker Bros., Inc.*, 634 N.E.2d 528, 530 (Ind.Ct.App.1994). An abuse of discretion also results from a trial court's decision which is without reason or is based upon impermissible reasons or considerations. *Id.* "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). "An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *Id.* Although the trial court had discretion to order the guardian not to elect against the will, when it exercises such discretion it must do so in the best interest of the surviving spouse. The exercise of sound judicial discretion in not an unlimited power and must not be done arbitrarily. *Department of Insurance v. Motors Ins. Corp.*, 236 Ind. 1, 138 N.E.2d 157 (1956). The removal of the language requiring the guardian to petition the court and subsequently for the court to hear evidence did not remove the trial court's responsibility to base its determination on the best interest of the surviving spouse. We recognize that a competent widow may elect to take under will or under law of descent even if her choice might be detrimental to her best interest, *Grammer v. Bourke*, 117 Ind.App. 151, 70 N.E.2d 198 (1947). However, a trial court's determination for an incompetent spouse must be

based on a consideration of the facts and circumstances which affect the surviving spouse's best interest, including the comparative monetary results.

In *Spencer v. Williams*, 569 A.2d 1194 (D.C.App.1990), the court examined the two general approaches by which trial courts determine the best interest of an incompetent spouse.

This brings us back to our initial inquiry: what standard the court is to use in determining whether it should authorize an election, on behalf of the incompetent spouse, to take the statutory share?

Courts in this country have, by and large, taken one of two general approaches in answering this question. Both approaches, not surprisingly, purport to address the best interests of the surviving spouse.

The first approach, and the one adopted by the trial court, is usually characterized as the minority view. It has as its central precept the belief that in most circumstances, the best interests of the incompetent spouse will be met by electing the option which provides the surviving spouse with the greatest monetary value. [Citations omitted].

The second, or majority approach, on the other hand, comprises the view that the minority approach involves too narrow a conception of the spouse's best interests. While courts favoring the majority approach look upon the pecuniary value of the property as one factor in their analyses, they assert that other considerations should be taken into account as well.

*Id.* at 1197–98. *See also Kinnett v. Hood*, 25 Ill.2d 600, 185 N.E.2d 888 (1962) (reviewing the two general approaches).

▇▇ Although we do not attempt to list the potentially relevant factors, we believe that the better method is to allow the trial court to consider relevant facts and circumstances in addition to the comparative mone-

tary results in determining the best interest of the surviving spouse. In doing so, we agree with the logic of the court in *Kinnett v. Hood*, 25 Ill.2d 600, 185 N.E.2d 888 (1962):

By placing the election purely upon monetary consideration, too much emphasis is placed upon the best interest of the incompetents' estates (and their heirs after death), with a possible detriment to the personal welfare, comfort and best interest of the incompetent. As the Wisconsin court noted in the Washburn case: "But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion." (59 Wis. 483, 17 N.W. 289)....

It is impractical to delineate the factors which would apply in every case or, in fact, the relative weight to be given each in order to determine that which is to the best interest of the incompetent. Certainly the factor of value is important and in many cases would outweigh all others.

*Id.* 185 N.E.2d at 889.

▇▇ Under the will, Foman would receive five thousand dollars ($5,000). By electing to take against the will, Foman would receive approximately one hundred thousand dollars ($100,000). The trial court did not hear evidence regarding Foman's best interest during the hearing on the objection to the final accounting and specifically sustained objections to the introduction of evidence regarding whether a guardian, *if appointed*, should elect against the will. R. 277–80. In doing so, the trial judge indicated, "I'm here to determine the competency only at this time and decide what I am going to do from there, . . . ." R. 280. However, the trial court subsequently issued an order indicating not only that Foman was incompetent when she exercised her election, but also appointing a guardian and ordering the guardian not to elect to take against Odell's will. R.186–87.[2]

**2.** The trial court found that Odell set forth his testamentary plan in light of Foman's condition. Although we do not hold that it is necessarily improper to consider the testator's intent in arriving at the best interest of the surviving spouse, the existence of a statutory right to elect against

the testator's will makes clear that many times they will conflict. As was noted in *Spencer v. Williams*, 569 A.2d 1194 (D.C.App.1990), "[w]hile it is true that great respect is ordinarily to be paid to testamentary intent, the very pur-

We fail to find, nor does the estate direct us to, sufficient evidence in the record from which the trial court could determine that not electing against Odell's will was in Foman's best interest. There was no evidence of Foman's present financial situation or her monetary needs. There must be factors apparent in the record which would justify the trial court's order, especially given the considerable monetary difference between Foman's taking under the will and an election to take against the estate. Therefore, we find that the trial court abused its discretion in ordering the guardian not to elect to take against the will on Foman's behalf.

Accordingly, we remand this case to the trial court with instructions to hear evidence on whether Foman's best interests are served by a taking under the will or an election to take against the will.

Reversed and remanded for further proceedings consistent herewith.

KIRSCH, J. concurs.

STATON, J. dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion for the following reasons:

1. The trial court acted without any statutory authority when it ordered the guardian not to elect to take against the will.

2. The order of the trial court is absolutely against the statutory framework of guardianships and decedents' estates.

3. The order and actions of the trial court violated Grace Foman's right to elect against the will of her deceased husband.

4. The trial judge is attempting to function as guardian of Grace Foman and as the judge administering the estate. This is an obvious conflict of interest, *and* a conflict which has proven very injurious to Grace Foman's best interests.

pose of a forced share statute is to override the

What a statute does not say is just as important as what it does say. *Bonge v. Risinger,* 511 N.E.2d 1082, 1084 (Ind.Ct.App. 1987). Here, IND.CODE § 29–1–3–4 (1993) provides that only the surviving spouse can exercise her election to take against the will. Where the spouse is unable to make the election and is a protected person, the statute makes an exception. The exception permits the court to "order the guardian of the spouse's estate to elect for the spouse." *Id.* Nowhere in the statutes is there a provision allowing the trial court to order the guardian how to elect for the spouse. This is an addendum of the trial judge's own making which not only conflicts with Grace Foman's best interests but conflicts with the constitutional power of the legislature.

Grace Foman's son has been appointed as her guardian. Included within the guardian's responsibilities are the care and custody of the protected person as well as her property. IND.CODE § 29–3–8–1 (1993). This requires the guardian to familiarize himself with the protected person's "capabilities, disabilities, limitations, needs, opportunities, and physical and mental health." IC 29–3–8–1(a)(1). It is obvious that the trial court has not qualified as the guardian under the aforesaid statute and should not be attempting to substitute its will over the judgment of the duly appointed and qualified guardian. By electing to take against the will, Grace Foman would receive one-third of her deceased husband's estate, or one third of $200,000.00, compared to $5,000.00 under the will. In attempting to exercise his responsibility of acting in the best interests of his mother, the guardian has been stymied by the trial court which is acting without statutory authority.

Another observation that deserves note. The Majority relies on language used *In re Estate of Covell,* 540 N.E.2d 74 (Ind.Ct.App. 1989), *trans. denied. Covell* made the same mistake as the Majority by reading language in the statute that does not exist. The language taken from *Covell,* which purports to recognize the duty of the trial court to supervise and approve a guardian's actions in the factual context of this case, is completely

decedent's plan." *Id.* at 1199.

unsupported by any citation to authority. Quite simply, that is because no such authority exists.

I would reverse the trial court, but I would not instruct the judge who has already shown his bias to hold a hearing and to receive evidence so that he can decide whether the election is in Foman's best interests. During the probation of an estate, an election to take against the will does not require a separate hearing to decide if the election is in the best interests of the person making the election. Guardianships are a separate and distinct legal proceeding. If proper proceedings are initiated in the guardianship, the trial judge who has already made his bias known should disqualify himself.