PRESENT:  All the Justices

HENRY M. FIELDS, ET AL.
                                        OPINION BY
v.  Record No. 970112        JUSTICE LAWRENCE L. KOONTZ, JR.
                                       April 17, 1998
BONNIE LOU SALMON FIELDS, ET AL.


          FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                  Charles H. Smith, Jr., Judge

     In this will contest, we consider whether the trial court

properly determined that the testator lacked the requisite

testamentary capacity at the time he executed the later of two

wills offered for probate.

     Robert McKinley Fields (testator) died on May 23, 1994,

leaving two wills.  The earlier of these two wills, dated August

28, 1975, was admitted to probate by the order of the clerk of

the Circuit Court of Washington County on May 25, 1994.  On that

same day, a will dated November 1, 1988, was also presented to

the clerk for probate.

     The testator was married three times.  Four children, Katie

L. Fields Harris, Bertia F. Sanders, Mary Lou Fields Wise, and

Henry M. Fields, were born of the first marriage.  Three

children, Dale Fields, Carl Fields, and Robert Fields, were born

of the second marriage.  The testator's final marriage produced

one child, David Wayne Fields.  Henry M. Fields, Bertia F.

Sanders, and Mary Lou Fields Wise (petitioners) are the

proponents of the 1988 will.  Bonnie Lou Salmon Fields, the

testator's widow, and the testator's remaining children were all named as respondents to the petition to have the 1988 will admitted to probate.

The 1975 will initially acknowledges Bonnie Lou Salmon Fields as the testator's wife, David Wayne Fields as his child of that marriage, and four children from the two prior marriages, but fails to make any reference to the three other children from those marriages. The will divides the estate into equal shares to be distributed to Bonnie Lou Salmon Fields and David Wayne Fields. In two separate clauses, the will expressly excludes the testator's other children from receiving any share of the estate. The will contains attestation and self-proving clauses with three witnesses each and a notary's certification in accordance with Code § 64.1-87.1.

The 1988 will, which expressly revokes all prior wills, provides for the distribution of one-third of the estate to the testator's widow and two-thirds equally among all eight of his children. A further provision directs that any debts due from a beneficiary are to be deducted from that beneficiary's share and that "heirs that did not contribute to the expense to my daughter, Mary Lou, for taking care of me during the week days while my wife was at work, equal amount is to be deducted from any inheritance that will be due them." This will also contains

attestation and self-proving clauses with two witnesses each and a notary's certification.

The petition challenged the order admitting the 1975 will to probate and sought an order declaring the 1988 will valid and admitting it to probate. Code § 64.1-78. An answer demanding strict proof of the claims of the petition was filed on behalf of the widow and the testator's five other children.

In a hearing before the chancellor, the petitioners presented testimony from the notary and the two individuals who witnessed the execution of the 1988 will. The notary testified that she knew the testator as a customer of the bank where she was employed. She further testified that she spoke with the testator and that he acknowledged the writing to be his will. She further testified that she would not have notarized the execution of the will had she felt there was anything "suspicious" or that the testator was not "sane."

Both of the witnesses to the 1988 will were also employees of the bank. One testified that she recalled being asked by the manager of the bank to witness the execution of the will, but that she did not remember anything particular about the testator. The other also recalled being asked to witness the execution of the will and testified that she believed the testator to have been "sane" at that time.

3

The respondents presented evidence from numerous lay witnesses concerning the general mental and physical capacity of the testator between 1975 and 1988.  In sum, that evidence shows that the testator was of declining health, that he was increasingly confused, and that he occasionally engaged in inappropriate behavior.  Several witnesses testified that at times the testator would not recognize family members, could not discuss current affairs, and could not understand a legal document.  On cross-examination, several of the witnesses conceded, however, that the testator could recognize family members and discuss family matters on occasion.  Although all of these witnesses had regular contact with the testator, none testified concerning specific events reflecting his testamentary incapacity on November 1, 1988.

Mary Lou Fields Wise testified in rebuttal that she frequently visited the testator and that he was able to converse about politics, read the Bible with her, and sing songs.  She further testified that while visiting the testator on November 1, 1988, she informed him that she had to go to the bank.  The testator asked to accompany her because he also needed to go to the bank.  In additional rebuttal testimony, Henry M. Fields testified that he was also present on November 1, 1988, and that the testator stated that he wanted to go to the bank because he had a paper he needed to have notarized.  Both of these

witnesses disputed the testimony of the respondents' witnesses that the testator was confused and could not recognize family members.

In the final decree, the chancellor found that the 1988 will was invalid "due to [the testator's] physical and mental [incapacity]." The decree further provided that the 1975 will was the testator's last will and that its admission to probate was proper. We awarded the proponents of the 1988 will this appeal.

The sole issue in this appeal is whether the evidence supports the chancellor's finding that the testator lacked the requisite testamentary capacity when he executed the 1988 will. Our resolution of this issue is guided by well established principles.

The proponents of the 1988 will had the burden of proving the existence of that degree of mental competence required for the valid execution of a will by a preponderance of the evidence and retained that burden throughout the proceeding. Gibbs v. Gibbs, 239 Va. 197, 199, 387 S.E.2d 499, 500 (1990); Code § 64.1-47. In clarifying the degree of mental competence required for a person to have testamentary capacity, we have held that a testator need not "retain all the force of intellect which he may have had at a former period," Wooddy v. Taylor, 114 Va. 737, 741, 77 S.E. 498, 500 (1913), and under certain

5

circumstances may even be legally incompetent to transact other business.  See Tate v. Chumbley, 190 Va. 480, 493, 57 S.E.2d 151, 157 (1950).  Rather, for testamentary capacity to exist, it is sufficient that at the time the testator executed his will, he was capable of recollecting his property, the natural objects of his bounty, and their claims upon him, and knew the business about which he was engaged and how he wished to dispose of his property.  Tabb v. Willis, 155 Va. 836, 859, 156 S.E. 556, 564 (1931).

"[T]he time of execution of the will . . . is the critical time for determining testamentary capacity.  The testimony of witnesses as to the mental capacity of the testat[or] at this time carries great weight."  Thomason v. Carlton, 221 Va. 845, 853, 276 S.E.2d 171, 175 (1981).  Evidence of sickness or impaired intellect at other times is insufficient, standing alone, to render a will invalid.  Gilmer v. Brown, 186 Va. 630, 639, 44 S.E.2d 16, 20 (1947); see also Tate, 190 Va. at 495, 57 S.E.2d at 158 (testatrix on furlough from mental institution was not per se incompetent to execute will).

Here, the petitioners presented testimony from the two individuals who witnessed the execution of the 1988 will and the notary who notarized the signatures of the testator and the witnesses.  The notary expressly stated that she spoke with the testator, that he acknowledged the writing as his will, and that

6

she would not have notarized the execution of the will had she believed that he lacked the capacity to execute a will. One of the two witnesses corroborated the notary's testimony. The other witness did not disavow her attestation in the self-proving clause.

In addition, Mary Lou Fields Wise and Henry M. Fields testified that, on the day the testator executed the 1988 will, they were in his presence. Both of these witnesses related the testator's desire to go to the bank to have a paper notarized, indicating no confusion in that desire or the purpose contemplated by the testator as reflected by the occurrence at the bank.

The respondents' evidence related to the testator's mental capacity did not directly contradict the testimony of those present at the time the testator executed the 1988 will or at any time on the day it was executed. While the respondents' evidence established that at other times the testator might very well have lacked the requisite mental capacity to execute a will, the respondents offered only lay witness testimony. As such, the observations of these witnesses are valuable only to provide "facts which indicate such incapacity" generally, and not as evidence of incapacity on the date the will was executed. Thornton v. Thornton's Executors, 141 Va. 232, 237, 126 S.E. 69, 70 (1925). In such cases, the testimony of lay witnesses will

not overthrow the testimony of the witnesses to the execution of the will where the latter evidence is clear as to the testator's capacity at the time the will was executed.  See id. at 239, 126 S.E. at 71.

Accordingly, we hold that the evidence of the witnesses to the execution of the 1988 will, which must be afforded great weight, coupled with the evidence of the other witnesses present with the testator on November 1, 1988, establishes by a preponderance of the evidence that the testator had the requisite testamentary capacity to execute the will on that date.

For these reasons, we will reverse the chancellor's decree that the 1975 will was properly admitted to probate and remand with instructions that the 1975 will be withdrawn from probate and that the 1988 will be admitted to probate.

Reversed and remanded.