PRESENT:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Stephenson, S.J.

CHARLES WHEELER JONES, ET AL.

v.  Record No. 030123      OPINION BY JUSTICE ELIZABETH B. LACY
                                     January 16, 2004
DAVID W. K. PEACOCK, JR., EXECUTOR
AND TRUSTEE UNDER THE WILL OF
GERALDINE M. JONES, DECEASED, ET AL.

              FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Frederick B. Lowe, Judge

     In this appeal, Charles Wheeler Jones and Richard

Franklin Jones ask this Court to reverse the trial court's

judgment that their father, B. Franklin Jones, did not have

the requisite mental capacity to execute a claim for an

elective share of his deceased wife's augmented estate

pursuant to Code § 64.1-13.  Because we conclude that the

trial court utilized the wrong standard for mental competency

and that the record does not show Franklin Jones was

incompetent to execute the claim, we will reverse the judgment

of the trial court and remand the case for further

proceedings.

                       FACTS AND PROCEEDINGS

     Geraldine M. and B. Franklin Jones (the Joneses) were

married for 15 years.  During the marriage the Joneses lived

at Westminster Canterbury, a retirement home and nursing

facility.  For the last five years of the marriage, Mrs. Jones

resided in the health care section of the facility.  Although

they lived apart, the Joneses saw each other on a daily basis and generally dined together.

Mrs. Jones died on May 15, 2000. Her will, dated April 11, 1995, was admitted to probate. According to the terms of the will, the majority of Mrs. Jones' estate was to be held in trust for the lifetime benefit of Franklin Jones. Upon his death, any remaining assets were to be distributed to certain named beneficiaries. Mrs. Jones had no children, but Franklin had two sons by a prior marriage.

At the time of his wife's death, Franklin resided in the assisted living section of Westminster Canterbury. On August 22, 2000, he was moved to a nursing home level of care because he refused to take food, fluids, or medication, had expressed a desire to die, and was found wrapping a call bell cord around his neck.

On August 24, 2000, Richard Jones visited his father. During this visit Richard gave his father a completed but unsigned Notice of Claim for Elective Share of Augmented Estate (Notice of Claim). Franklin signed the Notice of Claim and his signature was notarized by Harriet Smith, an employee of Westminster Canterbury. Richard Jones filed the Notice of Claim with the clerk of the Circuit Court for the City of Virginia Beach later that day. Franklin died two days later on August 26, 2000 at the age of 90.

David W. K. Peacock, Executor and Trustee of Mrs. Jones' estate (Executor), filed an amended bill of complaint for advice and guidance asserting that the Notice of Claim was not valid because Franklin Jones was not competent to execute it on August 24, 2000. The executor argued that Code § 64.1-13 requires a notice of claim to be recorded under the same conditions as other recorded instruments such as deeds and contracts, and thus, a notice of claim is analogous to a contract. Therefore, according to the Executor, the mental capacity required to validly execute a deed or contract should also be required in order to validly execute a notice of claim under Code § 64.1-13.[1] Based on the deposition testimony and medical records in this case, the Executor argued that Franklin Jones did not have the requisite mental capacity to validly execute the Notice of Claim on August 24, 2000.

The respondents, Charles and Richard Jones, asserted that the Notice of Claim was analogous to a testamentary document and, therefore, the requisite mental capacity should be that applicable to the execution of wills.[2] Continuing, the sons

---

[1] A party is competent to execute a deed or contract if at the time of execution, the party has sufficient mental capacity to understand the nature of the transaction and agree to its provisions. Hill v. Brooks, 253 Va. 168, 175, 482 S.E.2d 816, 821 (1997).

[2] A party is competent to execute a will if the party has sufficient mental capacity at the time of execution to "recollect[] his property, the natural objects of his bounty,

maintained that regardless of which standard was applied, Franklin Jones was competent to validly execute the Notice of Claim on August 24, 2000.

With the agreement of the parties, the case was submitted to the trial court on the pleadings, deposition testimony, medical records, and argument of counsel.  Applying the level of competence required to execute a deed or other legally binding contract, the trial court held that Franklin Jones "did not understand the nature of the notice of claim and the consequences of signing it" and therefore, the Notice of Claim was invalid.  We granted the sons this appeal.

DISCUSSION

A.  Standard of Competency to Execute a Notice of Claim

The parties and the trial court recognized that we have not previously considered the appropriate competency standard for executing a notice of claim under the augmented estate statutes.  Resolving the issue is a matter of law, and we apply a de novo standard of review to the judgment of the trial court.  Firebaugh v. Whitehead, 263 Va. 398, 402, 559 S.E.2d 611, 614 (2002).

---

and their claims upon him, and kn[o]w the business about which he was engaged and how he wished to dispose of his property." Fields v. Fields, 255 Va. 546, 550, 499 S.E.2d 826, 828 (1998).

4

In concluding that execution of a notice of claim requires the same level of mental capacity as that required to execute a deed or contract, both the trial court and the Executor relied in part on Code § 64.1-13. Subsection A of that section prescribes that a written notice of claim filed with the clerk of court be "upon such acknowledgment or proof as would authorize a writing to be admitted to record under Chapter 6 (§ 55-106 et seq.) of Title 55." The trial court concluded, and the Executor argues, that Code § 64.1-13 implicitly suggests a similarity between contracts, deeds, and notices of claim because the referenced sections in Chapter 6 of Title 55 govern other recorded instruments such as deeds and contracts.

We do not find this argument persuasive. The referenced sections in Title 55 address only the form that a document must meet to be admitted to record. There is nothing in these statutory provisions, or any other, that establishes the level of competence required to execute a notice of claim.

The parties and the trial court also looked to cases from other jurisdictions for guidance: Foman v. Moss, 681 N.E.2d 1113 (Ind. Ct. App. 1997); In re Dellow's Estate, 287 N.W. 420 (Mich. 1939); In re Estate of Disney, 550 N.W.2d 919 (Neb. 1996); In re Estate of Bergren, 47 N.W.2d 582 (Neb. 1951); Rau v. Krepps, 133 S.E. 508 (W. Va. 1926). The trial court relied

primarily on language contained in the West Virginia case of Rau v. Krepps. In that case, the surviving spouse had not executed any written document claiming a statutory share of the estate, and the issue was whether such election could be implied by the actions of the surviving spouse. Rau, 133 S.E. at 510-12. The mental capacity of the surviving spouse was not at issue. Neither Rau nor any of the cases cited by the parties directly equated the competency level for taking an elective share of a deceased spouse's property with that required for executing a contract, deed, or will.

Implicit in these cases, however, is the proposition that the execution of an instrument claiming an elective share is not the same as the execution of a contract or will. We agree. A contract involves a bilateral exchange, a meeting of the minds, and an understanding of obligations undertaken — factors not present in taking an elective share. A will requires action by only the testator and does not affect the testator's present or future interests. Choosing an elective share over provisions made in a will, although a unilateral act, does affect future interests of the surviving spouse. Indeed, the courts in each of the cases relied upon by the parties described the level of competence in terms of the consequences of the action at issue. Disney, 550 N.W.2d at 924 (whether surviving spouse was capable of understanding and

6

protecting his or her own interests when instrument executed); Foman, 681 N.E.2d at 1117, citing Bergren, 47 N.W.2d at 589 (whether widow had "the capacity to understand what she was doing and to decide intelligently whether she desired to execute the instrument"); Dellow, 287 N.W. at 422 ("If [the widow] was capable of reasoning and taking reasonable action, she was competent to make an election"). We agree that the distinct nature of an election warrants a level of competency uniquely connected to that act.

We hold that at the time an election is made under Code § 64.1-13, the surviving spouse must have the capacity to understand his right to elect against the will and receive a share of the estate established by law and to know that he is making such an election. Competency to execute the notice of claim does not require a surviving spouse to know the specific amount that will be received as a result of such an election. Indeed, that amount may not be determined without litigation. Chappell v. Perkins, 266 Va. 413, 418, 587 S.E.2d 584, 586-87 (2003). Whether a surviving spouse exercises good judgment when making an election is not relevant to the issue of mental capacity to make such a choice. See, e.g., Thomason v. Carlton, 221 Va. 845, 855, 276 S.E.2d 171, 177 (1981) (an unwise decision or mistake in judgment in making a will is not evidence of incompetency); Smyth Bros.-McCleary-McClellan Co.

7

v. Beresford, 128 Va. 137, 169-70, 104 S.E. 371, 382 (1920) (capacity to make a contract controls, not the propriety or impropriety of any dispositions of the maker's property that may be made therein); Greer v. Greers, 50 Va. (9 Gratt.) 330, 333 (1852) (testator does not lack capacity merely because his disposition appears unreasonable or imprudent).

Accordingly, we hold that the trial court erred in applying the standard for mental capacity required to execute a deed or contract to the execution of a notice of claim pursuant to Code § 64.1-13. Although the trial court applied the wrong standard, the parties have acknowledged that because the evidence in this case was solely in the form of deposition testimony, we need not remand this case for a determination of competency, but can resolve that issue based on the record before us. Kaplan v. Copeland, 183 Va. 589, 593, 32 S.E.2d 678, 679 (1945).

B.   Factual Finding Regarding Competency

In determining whether a party was competent to make an election under Code § 64.1-13, we begin with the presumption that all persons are competent, and the party challenging this presumption has the burden of establishing incompetency. Brown v. Resort Developments, 238 Va. 527, 529, 385 S.E.2d 575, 576 (1989).

Franklin Jones' two treating physicians testified by deposition.  Dr. Jerry H. Morewitz, a psychiatrist, began treating Franklin Jones for mild to moderate depression in February 2000.  Throughout his treatment, Dr. Morewitz found Jones alert and with appropriate mental skills.  The last time Dr. Morewitz saw Jones was August 22, 2000, the day Jones had been transferred to the health care facility because he would not take food, water, or medications.  On that occasion, Jones would not communicate with Dr. Morewitz.

Dr. Otarod Bahrani, Jones' primary care physician, also saw Jones on August 22, 2000.  Jones did communicate with Dr. Bahrani.  According to Dr. Bahrani, Jones was alert and oriented on that date.

Both doctors testified that Franklin's weakening condition could cause his mental state to fluctuate, but neither doctor could form an opinion as to whether Franklin Jones was competent to sign the Notice of Claim form on August 24, 2000.[3]

---

[3] Dr. Bahrani testified that he did not think Franklin Jones was competent to execute a contract, to buy a car, or purchase a house.  However, on cross-examination he explained that the complexity of matters associated with buying a house such as finances and insurance would be difficult for someone "just in the hospital" to undertake, although many people at the end of life can make decisions "in the last minute" and he did not know "about Mr. Jones in this case."

Nothing in the testimony of either physician indicates that Franklin Jones lacked the capacity to understand his right to claim an elective share under Code § 64.1-13 or to know that he was executing such a claim on August 24, 2000. In fact, the evidence of record suggests the contrary.

Ms. Harriet Smith testified that she knew Franklin Jones "fairly well" and visited him throughout his residency at Westminster Canterbury. She recalled that when she was called to his room to notarize the Notice of Claim on August 24, 2000, he recognized her and called her by name. Ms. Smith testified that when he signed the Notice of Claim he "was alert."

Richard Jones testified that he brought the Notice of Claim to his father on August 24, 2000 pursuant to his father's request. Franklin recognized Richard and "appeared glad" to see him. Richard told his father about the Notice of Claim and told him that his signature would have to be notarized if he chose to sign the document. Richard testified that his father read the Notice of Claim before signing it. Richard also testified that his father raised the subject of the elective share some years before and that Richard had assisted his father in getting the answers to some questions regarding the elective share.

Based on the record before us, we conclude that the Executor failed to satisfy his burden of establishing that on August 24, 2000, Franklin Jones did not have the mental capacity to understand his right to elect against the will and take a share of the estate as prescribed by statute or to understand that he was executing such an election when he signed the Notice of Claim on August 24, 2000.  Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

<u>Reversed and remanded.</u>