COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


J. MICHAEL SHARMAN, ESQUIRE,
  GUARDIAN *AD LITEM* FOR THE MINOR CHILD

v.      Record No. 0340-09-4

MIRIAM R. DIAZ-MENDES AND CULPEPER COUNTY
  DEPARTMENT OF SOCIAL SERVICES


J. MICHAEL SHARMAN, ESQUIRE,
  GUARDIAN *AD LITEM* FOR THE MINOR CHILD      MEMORANDUM OPINION[*] BY
                                               JUDGE RANDOLPH A. BEALES
v.      Record No. 0341-09-4                        MARCH 2, 2010

MIRIAM R. DIAZ-MENDES AND CULPEPER COUNTY
  DEPARTMENT OF SOCIAL SERVICES


J. MICHAEL SHARMAN, ESQUIRE,
  GUARDIAN *AD LITEM* FOR THE MINOR CHILD

v.      Record No. 0342-09-4

MIRIAM R. DIAZ-MENDES AND CULPEPER COUNTY
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
John G. Berry, Judge

J. Michael Sharman (Commonwealth Law Offices, P.C., on briefs),
Guardian *ad litem* for minor children.

Gilbert Harrison Berger (Berger Law Office, P.C., on brief), for
appellee Miriam R. Diaz-Mendes.

Robert F. Beard for appellee Culpeper County Department of
Social Services.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Culpeper County Department of Social Services (DSS), following the statutory provisions for review of foster care placements, filed a plan requesting termination of the parental rights of Miriam R. Diaz-Mendes (mother) in relation to her three children who had been placed with a foster care family.[1] The trial court found that DSS had not proven by clear and convincing evidence that mother's parental rights should be terminated and denied the request to terminate her rights. J. Michael Sharman, acting as the guardian *ad litem* for the three children, (collectively, appellant) appealed that decision to this Court,[2] arguing that the trial court erred in finding the evidence was not sufficient to prove that mother's rights should be terminated.[3] After reviewing the record in this case, we find that we must affirm the trial court's decision.[4]

## I. STANDARD OF REVIEW

As these appeals involve a sufficiency question, we are guided by the well-established standard of review that "a trial court's determination is considered to have settled all conflicts in the evidence in favor of the prevailing party, and the prevailing party's evidence is entitled to all reasonable inferences fairly deducible therefrom." Farley v. Farley, 9 Va. App. 326, 328, 387

[1] DSS also petitioned for termination of the father's parental rights, which the trial court granted. That termination is not before us in this appeal.

[2] DSS did not appeal the trial court's decision. On brief, DSS acknowledges that, at the trial level, it presented evidence that it believed was sufficient for the trial court to conclude that mother's rights should be terminated. However, given the trial court's weighing of that evidence and the standard of review on appeal, DSS agrees with mother that the grounds for arguing that the trial court erred are limited.

[3] Appellant lists seven questions presented in his brief. However, six of these questions ask this Court to review the sufficiency of the evidence to support particular factual findings of the trial court, and the seventh question asks if, overall, the factual findings of the trial court supported "its legal conclusion" that mother's parental rights should not be terminated. As the six questions are essentially encompassed in the seventh, we do not address the questions individually in this opinion.

[4] Mother raises three additional questions presented. As we affirm the trial court's denial of DSS's motion to terminate her parental rights, we need not address these questions raised by mother, as mother acknowledges in her brief.

S.E.2d 794, 795 (1990).  This Court presumes that the trial court correctly weighed the evidence and correctly applied the law, and we give broad discretion to the lower court's determination that a particular decision is in the best interests of a child.  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  "Our function is not to substitute our judgment for that of the trial judge, but to determine if the record contains sufficient credible evidence in support of the judgment from which the appeal is taken."  Ward v. Commonwealth, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991) (discussing termination of parental rights).  This Court will not reverse a trial court's decision regarding parental rights unless that decision is plainly wrong or is not supported by the evidence in the record.  Logan, 13 Va. App. at 128, 409 S.E.2d at 463.  "To be successful on appeal, therefore, [appellant] must demonstrate that, when viewed in this light [favoring mother], no subset of facts in this record could lead a rational factfinder to conclude" that DSS had failed to prove by clear and convincing evidence that mother's parental rights should be terminated.  Bailey v. Bailey, 54 Va. App. 209, 217, 677 S.E.2d 56, 60 (2009).

## II.  BACKGROUND

As this opinion is not designated for publication and the parties are familiar with the facts, we discuss only the evidence necessary to clarify the decision here.

Mother's three children were first placed in foster care when a DSS worker arrived at their home, looking for mother, and found that the children were there alone.[5]  Mother testified at trial that she was out looking for a job and had not expected to be gone very long.  She explained that she had asked a neighbor to look after the children.  The children were dirty and hungry when DSS took them into custody.  At that time, DSS had no other concerns about mother's ability to care for the children.  Neither drugs nor alcohol were ever observed in mother's home, nor did the

---

[5] At this point, father was incarcerated and could not help mother care for the children.

- 3 -

service providers ever see any indication that mother had any substance abuse problems. Nothing in the testimony at trial indicated that the children were ever physically or sexually abused in any way. The children appeared to be in good health generally, although one child was somewhat malnourished.

The children were placed with a foster family and provided with some counseling services. However, Meghan Smith, a counselor who worked with the children, testified that she observed nothing "out of the ordinary" as far as problems that needed to be addressed with these children. The children bonded with the foster family, but continued to keep a bond with mother.

DSS personnel met with mother after the children were taken from her home, as part of the process of preparing a Foster Care Service Plan. The initial plan's goal was to return the children to their mother. As part of the plan, DSS set specific objectives for mother to meet and discussed those objectives with her. The juvenile and domestic relations district court approved this plan.

Mother was cooperative with DSS personnel, as well as with other service providers, and she met many of the objectives in the plan. Mother was able to obtain employment, although she had trouble keeping a job for very long. Mother was able to prepare for the future monetarily, having saved $2,500 by the time she testified before the trial court. Mother paid some child support while the children were in foster care, and she found housing that DSS considered acceptable. She took parenting classes, although she did not attend the last session and, therefore, did not complete the course. Mother also took some English-as-a-Second-Language classes, and her understanding of both English and Spanish improved, although she still needed an interpreter during court proceedings. She exercised her visitation with the children, although sometimes the distance between Culpeper and the foster home created difficulties. Throughout this process, mother asked for help from DSS and other service providers. Mother failed to even

address only one of the objectives in the Foster Care Service Plan – she did not get a substance abuse evaluation and, therefore, did not follow through on any recommendations from such an evaluation. However, as noted *supra*, no evidence was ever introduced into the record that mother had any substance abuse problem.

Throughout this time, services were provided to the children, but DSS did not generally provide services to mother. DSS did, however, give mother information regarding classes that she could take and organizations from which she might be able to receive assistance. Several witnesses testified that mother was cooperative with DSS and other service providers when she interacted with them.

Despite the lack of services, mother achieved most of the objectives in the plan. No evidence was presented that mother failed to meet an objective in the plan because DSS failed to provide services to her. In fact, mother accomplished enough of the Foster Care Service Plan objectives that DSS intended to return the children to her. However, before returning the children to mother, DSS required that the children have one unsupervised, overnight visit with mother before the children returned to her permanently. This visit was set to occur during the first week of February 2007.

DSS told mother that the overnight visit had to occur at mother's new home, which had been approved by DSS as an appropriate place for the children. However, after she picked up the children, mother took them to her boyfriend's apartment because she did not have food or heat in her new home that night. Mother never asked anyone from DSS for help getting food for the children that evening nor had DSS approved the boyfriend's apartment as a place to take the children for an overnight visit. DSS had explained to mother that the boyfriend's home was inappropriate housing for the children because it lacked space -- four adults and an "unknown number of children" lived there -- although DSS did not know the square footage of his

apartment, had never been in the apartment, and mother's home was apparently even smaller although it had more bedrooms. Mother testified at trial that she and the children slept in her boyfriend's bed, while he slept on the floor in the same room.[6] DSS had no evidence that mother endangered the children by exposing them to unknown or dangerous people while they were in her care for the overnight visit, or, indeed, at any other time. DSS did not do a background check on the boyfriend and had no evidence that he or anyone in his apartment was a danger to the children for any reason. No one made any allegations that any of the children were abused during the overnight visit.

DSS stopped mother's visitation with the children after discovering that mother took the children to her boyfriend's apartment without DSS approval. Mother then contacted DSS to ask if she could continue to have some sort of visitation with her children. DSS agreed and allowed her to have several more supervised visits with the children. No evidence presented at trial suggested that anything happened during these visits that would have created any concerns about mother's ability to care for the children.

Within days after the overnight visit, DSS filed a new Foster Care Service Plan on February 12, 2007, but did not change the goal and did not add or expand the existing objectives for mother to meet. The new plan explained that mother had made substantial progress toward the original objectives and also discussed her failure to have the overnight visitation at her home. In August 2007, DSS changed the goal of the plan to termination of mother's parental rights and then disallowed any more visitation between mother and the children. Mother never completed

---

[6] Soon after this visit, the foster mother reported to DSS that the children had slept at the boyfriend's apartment in the same bed as the boyfriend. However, this evidence was contradicted by mother's testimony, and, given the standard of review on appeal, see Farley, 9 Va. App. at 328, 387 S.E.2d at 795, we must accept mother's evidence where it contradicts appellant's evidence.

the parenting classes nor did she get a substance abuse evaluation. She continued to live in the rooming house that DSS had approved as an appropriate place for the children to live.

The trial court, after hearing numerous witnesses, found that DSS did not prove by clear and convincing evidence that termination of mother's parental rights was in the children's best interests. The trial court also found that neither subsection 1 nor subsection 2 of Code § 16.1-283(C) was proven by clear and convincing evidence. Therefore, the trial court denied DSS's request that mother's parental rights be terminated. Appellant then appealed to this Court.

## III. ANALYSIS

"The termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever, and the parent becomes 'a legal stranger to the child.'" Lowe v. Department of Public Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986) (quoting Shank v. Dep't of Social Services, 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)). In order to terminate parental rights, a trial court must find,

> based upon clear and convincing evidence, that it is in the best interests of the child *and* that:
>
> 1. The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; *or*
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable

> to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Code § 16.1-283(C) (emphasis added). Therefore, the trial court must find that the evidence clearly and convincingly proves 1) that it is in the best interests of a child to terminate the parent's rights over that child *and* 2) that the parent has, "without good cause," either a) "failed to maintain continuing contact with and to provide or substantially plan for the future" of the child, despite the assistance of the appropriate agencies, or b) failed "to remedy substantially the conditions which led to or required continuation of the child's foster care placement," despite the assistance of the appropriate agencies.

Here, the trial court, as factfinder, heard the evidence *ore tenus*. The court then evaluated that evidence and found that DSS had not established by clear and convincing evidence that it was in the best interests of the children to terminate mother's remaining parental rights. The trial court also found that DSS had not established by clear and convincing evidence that mother had "failed to maintain continuing contact with and to provide or substantially plan for the future" of the children, pursuant to Code § 16.1-283(C)(1), nor had she "been unwilling or unable within a reasonable period of time . . . to remedy substantially the conditions which led to or required continuation of the child[ren]'s foster care placement," pursuant to subsection (2) of the statute. Thus, the trial court found that DSS did not prove either of the two prongs that the statute requires it to prove in order to terminate parental rights. As noted *supra*, footnote 2, DSS does not even seek to appeal the trial court's refusal to terminate mother's parental rights.

In order to reverse the trial court in this case, even if this Court found that the court erred in determining that termination was not in the best interests of the children, we would also have to find that the trial court erred in its finding that DSS proved neither subsection (C)(1) nor subsection (C)(2). Based on the following analysis and the facts in this case, we conclude that the trial court did not err in its consideration of subsections (C)(1) and (C)(2) of the statute, and, therefore, the denial of DSS's petition to terminate mother's rights should be affirmed because DSS did not meet its burden. As a result of that conclusion, the trial court's analysis of the best interests of the children need not be addressed because, even if the trial court erred in finding that termination was not in the best interests of these children, DSS would still not have met its two-pronged burden for terminating mother's parental rights, and so the trial court's denial of the motion to terminate mother's parental rights would still be affirmed. See Morgan v. Commonwealth, 50 Va. App. 120, 130-31, 646 S.E.2d 899, 904 (2007) (noting that appellate court opinions should be decided on the best and narrowest grounds and should avoid dicta).

### A. Subsection (C)(1)

The evidence in this record, viewed in the light most favorable to mother, as the party that prevailed below, see Ward, 13 Va. App. at 148, 408 S.E.2d at 923, supports the trial court's determination that DSS did not meet its burden to prove by clear and convincing evidence that mother failed to keep in contact with the children while they were in foster care. In fact, the trial court found, and the record indicates, that mother actively pursued visitation with the children, and on some occasions contacted DSS rather than waiting for them to contact her. She stopped having visitation with the children only after DSS informed her that she could not see the children again when DSS changed the goal of the Foster Care Service Plan to termination of her parental rights. As DSS would not allow her visitation with the children, mother had "good cause" at that point for her failure to continue maintaining contact with the children.

The evidence also supports the trial court's finding that DSS failed to prove by clear and convincing evidence that mother neglected to "provide or substantially plan for the future" of the children while they were in foster care. As DSS essentially conceded by deciding to return the children to her if the overnight visitation went well, mother substantially complied with most of the objectives of the plan. Mother had an approved home and a job. She had saved $2,500 to help provide for the children's future. Based on this evidence, we cannot say that the trial court erred when it found that DSS failed to prove by clear and convincing evidence that mother had "failed to maintain continuing contact with and to provide or substantially plan for the future" of the children. Thus, a rational factfinder could find that DSS did not meet its burden under Code § 16.1-283(C)(1) in order to terminate mother's parental rights.

## B. Subsection (C)(2)

The evidence in this record, viewed in the light most favorable to mother, see id., also proves that the trial court did not err when it found that DSS had not met its burden to prove by clear and convincing evidence that mother had failed "to remedy substantially the conditions which led to or required continuation of the child[ren]'s foster care placement."

Here, DSS itself determined that mother, prior to the overnight visit, had made substantial progress toward remedying the conditions that led to the children's placement in foster care. After that visit, during which mother had certainly not shown the best judgment, DSS did not change the objectives of the Foster Care Service Plan and did not include any new objectives. Instead, almost six months later, DSS changed the ultimate goal of the plan from reuniting the family to termination of mother's parental rights. DSS did not tell mother what objectives she had to meet to remedy this new "condition" that kept the children in foster care, especially as DSS had determined that she had sufficiently complied with the original objectives.

At the hearing before the trial court, DSS personnel discussed problems with mother's completion of the original objectives, but they did not discuss any new failures on her part that kept the children in foster care, other than the one incident involving overnight visitation. DSS personnel did not testify about any additional incidents that put the welfare of the children at risk or about any new failures on the part of mother to comply with the plan. No testimony suggested that DSS met with mother to discuss any new objectives, and no new objectives were included in the revised Foster Care Service Plan. The trial court, after considering all this evidence, found that DSS had not proved by clear and convincing evidence the conditions required under Code § 16.1-283(C)(2) that would allow the court to make mother "'a legal stranger'" to her three children. Lowe, 231 Va. at 280, 343 S.E.2d at 72. On appeal, we cannot find as a matter of law that this conclusion was in error and that no rational factfinder could have so found.[7]

## IV. CONCLUSION

We find that the trial court did not err when it denied DSS's motion to terminate mother's parental rights pursuant to Code § 16.1-283. Therefore, because we cannot conclude that no rational factfinder could have found that DSS failed to prove, with the required clear and convincing evidence, either of the subsections of Code § 16.1-283(C) necessary to terminate mother's parental rights to her children, we affirm the trial court's order.

Affirmed.

---

[7] The parties agree that one factual finding of the trial court was in error – that mother was facing eviction and was seeking new housing when her children were placed in foster care. As this fact, even if unsupported by the evidence, does not undermine the trial court's findings regarding Code § 16.1-283(C)(1) and (C)(2), we find any such error is harmless. See Code § 8.01-678; Stockdale v. Stockdale, 33 Va. App. 179, 185, 532 S.E.2d 332, 336 (2000), aff'd, 262 Va. 275, 551 S.E.2d 361 (2001).